CECIL L. RAMSEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ramsey v. Commissioner
Docket No. 16206-80.
United States Tax Court
T.C. Memo 1984-251; 1984 Tax Ct. Memo LEXIS 423; 48 T.C.M. (CCH) 73; T.C.M. (RIA) 84251; May 8, 1984. Meno W. Piliaris, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: This case was assigned to and heard by special Trial Judge Lee M. Galloway pursuant to the provisions of section 7456(c) and (d)[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *424 OPINION OF THE SPECIAL TRIAL JUDGE GALLOWAY, Special Trial Judge: Respondent mailed a notice of deficiency to petitioner on May 27, 1980, which determined the following deficiencies and additions to petitioner's Federal income taxes: INCOME TAX
ADDITIONS TO TAX
YEAR
DEFICIENCY
SEC. 6653(b)
1973
$176,671
$88,336
1974
435,383
217,692
1975
56,665
28,333
Petitioner's 1973 and 1975 income tax returns were filed with the Internal Revenue Service Center at Memphis, Tennessee, and his 1974 income tax return was filed with the Internal Revenue Service Center at Austin, Texas. Petitioner was a resident of Wewoka, Oklahoma, at the time of filing his petition with this Court on August 25, 1980. Respondent filed n answer on October 27, 1980 and petitioner filed a reply on November 13, 1980. On January 27, 1983, petitioner's counsel of record, John T. Kay, Jr., and George S. Bennett filed a written motion to withdraw as counsel pursuant to Rule 25(c), Tax Court Rules of Practice and Procedure.[3] The relevant portions of the motion stated in part: (a) On previous occasions, the undersigned did, in 1981, make attempts to settle this action on behalf *425 of the petitioner. That in order to adequately assess the tax figures, the presence and cooperation of the taxpayer was necessary and the taxpayer repeatedly failed or refused to keep in contact with counsel and present himself for conferences so that a correct assessment of the facts could be made and the correct amount of tax be determined. (b) Then on previous occasions, the petitioner, Cecil L. Ramsey, did verbally inform the undersigned that the petitioner no longer wished to pursue the issues of his tax liability in this action in either conferences with the United States Government or in the United States Tax Court. (c) That on February 13, 1981, the undersigned did, by letter, communicate the status of the case to the petitioner and requested that he be present in person in Charleston, West Virginia, for conferences with the United States Government in order to adequately assess the facts and determine the correct amount of tax, and further, that the petitioner did not appear personally and further informed the undersigned that he no longer wished to pursue the matter in any manner. (d) That on later occasions, the undersigned did, by telephone, contact the petitioner *426 in order to ascertain his intentions in this matter and in order to fully ascertain the intentions of the petitioner, the undersigned did, on April 23, 1981, write a letter to the petitioner informing him of the undersigned's understanding of his intentions by requesting that he communicate his exact desires in the matter so that the undersigned might properly proceed in this action. The petitioner has never responded to that communication. (e) That the undersigned did communicate the petitioner's lack of response to Mr. Ernest V. Morton, Jr., Esquire, another attorney for the petitioner. That, pursuant to that conversation, Mr. Ernest V. Morton, Jr., Esquire, did write a letter to the petitioner whereby the petitioner was requested to communicate his intentions and desires in the matter.The petitioner did not respond, as far as the undersigned knows, to the August 3, 1981, letter. (f) That the undersigned did, on January 21, 1983, attempt to telephone the petitioner, but was unable to do so. That in furtherance of this motion, the undersigned did forward a letter of even date with this motion to the petitioner informing him of the undersigned's intention to withdraw in this *427 matter and providing him with a copy of that motion, so that the petitioner might respond thereto. This Court granted the Motion To Withdraw As Counsel on February 3, 1983. The case was set for trial on June 20, 1983, at Charleston, West Virginia, where petitioner failed to make an appearance. Respondent made an oral motion for order for deficiencies due to lack of prosecution. The motion was denied and the case continued. The case was rescheduled for trial on July 18, 1983, at Charleston, West Virginia, where again petitioner failed to make an appearance. Respondent appeared and filed a written Motion For Order For Deficiencies Due To Lack Of Prosecution, which the Court took under advisement. The issues before us for decision are (1) whether we should grant respondent's unopposed Motion For Order For Deficiencies Due To Lack Of Prosecution, and (2) whether the addition to tax for fraud under section 6653(b) was properly determined by respondent. Petitioner has the burden of proof with respect to deficiencies in tax determined. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). *428 Other than the petition and reply, petitioner has made no attempt to rebut respondent's determination of deficiencies in his notice of deficiency. As we indicated above, when this case was called for trial, no appearance was made by or on behalf of petitioner. Petitioner's failure to appear is not surprising in view of the numerous unsuccessful efforts made by petitioner's former attorneys to meet with him concerning preparation of his case for trial. Rule 123 provides that any party may be held in default if he fails to proceed in accordance with the Rules of this Court; and that an issue may be decided against the party who fails to present and prosecute his case. Accordingly, we grant respondent's Motion For Order For Deficiencies Due To Lack Of Prosecution. See also, Rule 149(b); Gilday v. Commissioner,62 T.C. 260 (1974). The remaining issue is whether petitioner is liable for the addition to tax for fraud. The respondent has the burden of proof with respect to fraud. Section 7454(a); Rule 142(b). He must carry it with clear and convincing evidence. Stratton v. Commissioner,54 T.C. 255 (1970); Rule 142(b). For purposes of section 6653(b), *429 fraud is defined as the intentional wrongdoing with the specific intent to evade a tax believed to be owed. Powell v. Grandquist,252 F.2d 56, 60 (9th Cir. 1958); Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941), revg. and remanding 40 B.T.A. 424 (1939). The required intent may be shown by circumstantial evidence and reasonable inferences drawn from the facts. Stone v. Commissioner,56 T.C. 213, 224 (1971); Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. in unpublished opinion 578 F.2d 1383 (8th Cir. 1978).
Respondent must establish that for each of the years 1973 through 1975 there was an underpayment in the income tax due from petitioner and that some part of the underpayment for each year was due to the fraudulent acts of Cecil Ramsey. Plunkett v. Commissioner,465 F.2d 299 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Lee v. United States,466 F.2d 11 (5th Cir. 1972). We believe that the entire record clearly establishes that respondent has sustained his burden of proving fraud for all three years in issue. Respondent *430 met this burden through the presentation of facts extablished by the testimony of witnesses and the introduction of documentary evidence. Respondent has affirmatively shown various indicia of fraud. For each of the years in issue petitioner provided J. R. Tuckwiller, Jr., his accountant and tax return preparer, with false information and falsified records to use in the preparation of his Federal income tax returns. [4] These records consisted primarily of Ramsey's disbursement records, bank statements, cancelled checks and oral representations made to Tuckwiller and his associates. As a result, petitioner in each year failed to report a substantial amount of specific items of income which he obviously knew to be taxable and deliberately overstated deductions to minimize his taxable income. *431 We believe that petitioner was an intelligent individual and knew exactly what he was doing when he had records altered or misled his accountant. Petitioner is no stranger to the Federal tax laws and their requirements. [5] Petitioner's practice of making fraudulent bookkeeping entries and substantial understatements of income is evidence of fraud. Chesbro v. Commissioner,21 T.C. 123, 130 (1953), affd. 225 F.2d 674 (2d Cir. 1955), cert. denied 350 U.S. 995 (1956). The following are a few examples of petitioner's acts which show his total disregard of the tax laws and are not exhaustive of his activities that he engaged in to avoid his tax liability. In 1973, petitioner purchased overriding royalty interests in oil and gas wells for $10,000 and deducted this expense on his tax return. However, in 1973, petitioner sold these overrides *432 for $30,000 which he failed to report. During 1973 and 1974, petitioner advanced funds to an individual which he deducted as expenses, but failed to report $3,450 and $13,600, the amounts by which this individual reimbursed petitioner in 1973 and 1974, respectively.Petitioner failed to report $14,970 as income in 1974 that he received as compensation for constructing a gas gathering line. He cashed the checks received to conceal the transaction and avoid leaving an audit trail. Sometime in 1975, petitioner sold guns and jewelry for $120,000 and instructed his accountant to not report this transaction as it was not an income item. A pattern of consistent underreporting of income for a number of years, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud as to each of the years. Holland v. United States,348 U.S. 121, 129 (1957); Lollis v. Commissioner,595 F.2d 1189, 1191 (9th Cir. 1979); Furnish v. Commissioner,262 F.2d 727, 729 (9th Cir. 1958); Baumgardner v. Commissioner,251 F.2d 311, 322 (9th Cir. 1957), affg. a Memorandum Opinion of this Court; *433 Otsuki v. Commissioner,53 T.C. 96, 107 (1969). Petitioner's conduct in other transactions also supports an inference of fraud. Petitioner falsified and overstated expenses to reduce his tax liability, evidencing his intent to avoid taxes. For example, in 1973 he purchased furniture (specifically two bedroom suites, two living room suites and several odd end tables and chairs) from a hardware store for approximately $2,700. At his request the store clerk filled out the sales invoice to indicate that the purchase was for black pipe. Petitioner deducted this amount on his return as an equipping expense.Also in 1973, petitioner purchased by check a 1955 Ford Crown Victoria, a classic car, for $2,000. Petitioner deducted this amount on his return as wage expense when it was clearly used as a personal automobile. Further, petitioner classified and deducted various amounts as truck or bulldozer repair expenses in 1974. However, these amounts were actually expended on repairs of the Ford Crown Victoria and one expenditure was actually a wedding gift to his daughter.Also in 1974, petitioner purchased a commemorative pistol for $1,050. He deducted this amount as a *434 labor expense and falsified the check stub. The aforementioned items are a few examples of petitioner's practice of charging personal items to business expense which justifies the imposition of additions to tax for fraud. See The Hicks Co., Inc. v. Commissioner,56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Benes v. Commissioner,42 T.C. 358, 383 (1964), affd. 355 F.2d 929 (6th Cir. 1966). [6] It is clear that for purposes of fraud an understatement of taxes can be accomplished by an overstatement of deductions. The Hicks Co., Inc. v. Commissioner,supra at 1019; Neaderland v. Commissioner,52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970), cert. denied 400 U.S. 827 (1970). Another indication of fraud is a taxpayer's failure to maintain adequate records. See Grosshandler v. Commissioner,75 T.C. 1, 20 (1980); Nicholas v. Commissioner,70 T.C. 1057, 1066 (1978); Otsuki v. Commissioner,supra at 109. *435 Petitioner was warned by his accountant to deposit all his receipts and make all disbursements by check. Petitioner, however, conducted major portions of his business dealings in cash, thereby forcing his accountant to reconstruct his income from other sources. For example, during 1974, petitioner had seven currency transactions ranging from $12,982.67 to $364,607 in an attempt to conceal sources of income. Upon the basis of the foregoing and our consideration of the record as a whole, we hold that the respondent has proved by clear and convincing evidence that a part of the deficiency in each of the taxable years 1973-1975, inclusive, was due to fraud on the part of the petitioner, and we therefore affirm respondent's determination of additions to tax under section 6653(b). Accordingly, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of this Court dated July 1, 1983, the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to the proceedings in this case. Said order is based upon the authority of the "otherwise provided" language of that Rule.
3. All rule references shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
4. During the years in issue petitioner was involved in the business of promoting and selling working interests in oil and gas wells. He also was involved in the drilling, equipping and operating of oil and gas wells. Adjustments in the notice of deficiency for the tax years 1973-1975, inclusive, included petitioner's overstatement of and failure to substantiate many business deductions; and petitioner's failure to report other sources of income.↩
5. See Ramsey v. Commissioner,T.C. Memo. 1980-59↩, where this Court determined additions to tax under sec. 6653(a) for all three years before the Court, because it was found that part of petitioner's underpayment was due to negligence or intentional disregard of rules and regulations.
6. See also Simmons v. Commissioner,T.C. Memo. 1980-55↩.