Daryl STANDLEE, Petitioner-Appellee,

v.

B. J. RHAY, Respondent-Appellant.

No. 76–1297.

United States Court of Appeals,
Ninth Circuit.

July 21, 1977.

Thomas W. Hayton, Asst. Atty. Gen., Olympia, Wash., argued for respondent-appellant.

Phillip H. Ginsberg, Houghton, Cluck, Coughlin & Riley, Seattle, Wash., argued for petitioner-appellee.

Before CARTER and CHOY, Circuit Judges, and HOFFMAN,* District Judge.

JAMES M. CARTER, Circuit Judge:

The district court granted appellee's petition for a writ of habeas corpus and Warden B. J. Rhay appeals. Appellee had his parole suspended based on criminal charges for which he was later acquitted. The district court held that collateral estoppel prevented a finding of guilt on these charges in the parole revocation hearings. We disagree with this conclusion and therefore reverse.

## Facts

Appellee was paroled on September 28, 1970, from his 1959 conviction for rape. In January 1971, he was arrested and charged with two counts of second degree criminal assault. Subsequently, he was charged with six parole violations based on the same acts for which he was criminally charged: two counts of abduction, two counts of second degree assault, one count of attempted rape, and one count of sexual molestation.

Prior to his trial on the two criminal charges, a parole revocation hearing was held on March 11, 1971, at which appellee was represented by counsel. At that time, appellee testified that he was in another state and had an alibi but refused to name the people who could testify to this fact. He was found guilty of all six violations, but the hearing was continued until after the conclusion of his trial.

The criminal trial was held in King County Superior Court, Washington. Appellee pleaded not guilty and again presented an alibi defense. Two witnesses testified that he had been in Portland at the time the assault took place. One of the witnesses was apparently a girl friend. The second witness, Mrs. Merrill, was a friend of the girl friend. The trial judge, sitting without a jury, believed the testimony of Mrs. Merrill led to a reasonable doubt about appellee's guilt. He stated:

* Honorable Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

"[T]he testimony of Mrs. Merrill impressed me, not only her testimony but her appearance and demeanor upon the witness stand. . . . [T]o me her testimony is the one that weighed the scales of balance, whichever way they would fall. . . . [S]he left a reasonable doubt in my mind as to whether or not this defendant was the man who committed the offense."

Appellee therefore was acquitted.

The parole revocation was re-opened on June 17, 1971. The question of appellee's guilt was reexamined, with the same defense testimony presented except that Mrs. Merrill did not personally testify.[1] The hearing officer independently weighed the evidence and concluded on a preponderance of the evidence that appellee was guilty of the six parole violations.

Appellee then sought habeas relief in the Washington courts. The Supreme Court of Washington denied relief. *See Standlee v. Smith*, 83 Wash.2d 405, 518 P.2d 721 (1974). It found the doctrine of collateral estoppel inapplicable because of the differences in the burdens of proof between criminal and parole revocation proceedings. Having exhausted his state remedies, appellee filed a petition for a writ of habeas corpus with the district court. The petition was granted and appellee released. His present whereabouts is unknown.

### Collateral Estoppel

■ Appellee argues that the doctrine of collateral estoppel prohibits the parole board from finding him guilty of violations when the issue of guilt for the same acts had been resolved in his favor by the trial court. Collateral estoppel is embodied in the fifth amendment guarantee against double jeopardy, *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and is applicable to the states through the fourteenth amendment's due process clause, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Supreme

Court noted that collateral estoppel means "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson, supra,* 397 U.S. at 443, 90 S.Ct. at 1194. Collateral estoppel is an established rule in criminal as well as civil cases. *Id.; Coffey v. United States*, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886).

The difference in the burdens of proof in criminal and civil proceedings usually precludes application of collateral estoppel. In *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), the Court was confronted with an attempt by the Internal Revenue to assess a deficiency for fraud with intent to evade tax after the taxpayer had been acquitted for evasion of tax. The Court stated:

"The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of *res judicata*. The acquittal was 'merely . . . an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.'"

*Id.* at 397, 58 S.Ct. at 632, *quoting Lewis v. Frick*, 233 U.S. 291, 302, 34 S.Ct. 488, 58 L.Ed. 967 (1914).

Because of this difference in burdens of proof, an adjudication of the issues in a criminal case "does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceedings." *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1971). *See also Neaderland v. Commissioner*, 424 F.2d 639, 642 (2 Cir. 1970); *Strachan v. Shea*, 406 F.2d 521, 522 (5 Cir. 1969).

The nature of the sanction imposed by a proceeding also is determinative of whether collateral estoppel applies. Thus, an "acquittal on a criminal charge is not a bar to a civil action by the Government, *remedial in its nature*, arising out of the same facts on which the criminal proceeding was based

---

1. Appellee claims that he could not afford to pay Mrs. Merrill's travel costs and witness fees.

A transcript of her trial testimony was reviewed, however.

. . . ." *Helvering v. Mitchell, supra,* 303 U.S. at 397, 58 S.Ct. at 632 (emphasis added). Where, however, a punitive sanction results from a "civil" action, a prior acquittal in a criminal proceeding will bar the subsequent civil action. *See Coffey v. United States,* 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed.2d 684 (1886).[2]

This distinction is illustrated by cases involving forfeiture proceedings instigated subsequent to acquittals in criminal proceedings. In *United States v. One 1967 Cadillac El Dorado,* 453 F.2d 396 (9 Cir. 1971), this court held that the operative facts of a forfeiture proceeding were the same as those in a prior criminal proceeding so that the judgment of acquittal foreclosed the forfeiture proceeding. The court based its decision on the combined impact of collateral estoppel and the double jeopardy clause. If this case represented the law of this circuit, we might agree with the district court's reliance upon it.

But in *United States v. Kismetoglu,* 476 F.2d 269 (9 Cir.), *modifying* 468 F.2d 1386 (9 Cir.), *cert. dism'd,* 410 U.S. 976, 93 S.Ct. 1454, 35 L.Ed.2d 709 (1973), this court indicated that *El Dorado* had been overturned by the Supreme Court in *One Lot Emerald Cut Stones v. United States, supra.* There the Court held that a forfeiture proceeding pursuant to 19 U.S.C. § 1497 was not barred by an earlier acquittal of criminal charges stemming from the same acts. It reasoned that both the differences in burdens of proof and in types of sanctions prevented the operation of collateral estoppel. 409 U.S. at 235–36, 93 S.Ct. 489. We believe this reasoning controls here.

*Nature of a Parole Revocation Proceeding*

■ It is well established that parole revocation is not part of a criminal prosecution.

*Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Revocation of parole is remedial rather than punitive, since it seeks to protect the welfare of parolees and the safety of society. *Gagnon v. Scarpelli,* 411 U.S. 778, 783–84, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer, supra,* 408 U.S. at 477, 92 S.Ct. 2593. The termination of parole results in a deprivation of liberty and thus is a grievous loss to the parolee. But the harshness of parole revocation does not alter its remedial nature. *See United States v. National Association of Real Estate Boards,* 339 U.S. 485, 493 n. 6, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); *Gregory v. Wyse,* 512 F.2d 378, 382 (10 Cir. 1975).

The Supreme Court of Washington recognized the nature of parole revocation in denying appellee habeas relief. It stated:

> "Parole is revoked for violation of the terms and conditions of parole and as part of the continuing consequences of the crime for which parole was granted. Parole revocation is not punishment for the subsequent events which violate the parole and which may also constitute a separate crime." *Standlee v. Smith, supra,* 83 Wash.2d at 407, 518 P.2d at 722.

*See also In re Dunham,* 16 Cal.3d 63, 127 Cal.Rptr. 343, 545 P.2d 255 (1976), *cert. denied,* 429 U.S. 836, 97 S.Ct. 103, 50 L.Ed.2d 102 (1976); *People v. Morgan,* 55 Ill.App.2d 157, 204 N.E.2d 314 (1965).

The district court concluded that parole revocation is a punitive rather than remedial sanction. It based this conclusion on two grounds. First, the parole provisions of the State of Washington are found in Title 9 of the Revised Code of Washington, entitled "Crimes and Punishments." Second, the courts have extended several procedural

---

**2.** Appellee relies heavily on the old case of *Coffey v. United States,* 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886). Broadly interpreted, it stands for the proposition that a judgment of acquittal in a criminal proceeding is conclusive as to a particular fact in a subsequent civil proceeding. However, the Court in *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), distinguished *Coffey* on the basis

that the forfeiture proceeding in *Coffey* involved a criminal punishment while *Mitchell* involved a civil sanction. Moreover, *Coffey* has been severely criticized and its precedential value doubted by this court in *United States v. Gramer,* 191 F.2d 741, 743 (9 Cir. 1951). We need not decide whether *Coffey* retains any viability because we accept the *Mitchell* Court's interpretation of it.

safeguards to parole revocation hearings which indicate their quasi-criminal nature. We believe the district court was in error in reaching this conclusion.

While the location of a statute in a code may be relevant in interpreting that statute, the district court overemphasized this factor while giving no deference to the courts of Washington. The location of the statute is not dispositive. *Cf. One Lot Emerald Cut Stones v. United States, supra* (forfeiture statute deemed remedial initially part of same act as criminal provision of which defendant was convicted); *Helvering v. Mitchell, supra* (defendant acquitted of tax evasion under 26 U.S.C. § 146(b) subject to forfeiture under 26 U.S.C. § 293(b) ); *Murphy v. United States,* 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446 (1926) (prior acquittal under National Prohibition Act Title II, § 21 not dispositive of later forfeiture under Title II, § 22). The Supreme Court of Washington has determined that parole revocation is a remedial sanction. *Standlee v. Smith, supra,* 83 Wash.2d at 407, 518 P.2d 721. This court should defer to that finding.

It is true that the Supreme Court has extended certain procedural safeguards to parole revocation proceedings. *See Gagnon v. Scarpelli, supra,* 411 U.S. at 782, 93 S.Ct. 1756; *Morrissey v. Brewer, supra,* 408 U.S. at 489, 92 S.Ct. 2593. But similar procedural safeguards have been extended to forfeiture proceedings without changing their remedial nature. *See, e. g., United States v. U.S. Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1968). The extension of certain constitutional rights to a *proceeding* does not of itself change the nature of the *sanction* which results from that proceeding.

The district court also did not recognize the lower standard of proof in a parole revocation proceeding. *See State v. Kuhn,* 81 Wash.2d 648, 650, 503 P.2d 1061 (1972). *Cf. Pickins v. Texas,* 497 F.2d 981, 983 (5 Cir. 1974); *United States v. Carrion,* 457 F.2d 808, 809 (9 Cir. 1972). This lesser standard has been recognized by the Supreme Court as one of the crucial factors distinguishing parole revocation hearings from criminal proceedings. *See Morrissey v. Brewer, supra,* 408 U.S. at 479, 92 S.Ct. 2593. It also is the reason why appellee had his parole revoked even though he was acquitted of the criminal charges.

■ It follows that collateral estoppel does not bar a subsequent parole revocation hearing after a criminal acquittal. The sanctions imposed and the burdens of proof are different. These are the crucial factors identified by the Supreme Court in *One Lot Emerald Cut Stones v. United States, supra.* And they are the crucial factors here.

### Due Process

■ Appellee contends that he was denied due process because his key alibi witness, Mrs. Merrill, was not present at the final revocation hearing. Instead, her testimony was read from the trial transcript. As we have stated, however, parole revocation proceedings are not part of the criminal process and are not protected by the full panoply of due process rights. *See, e. g., United States v. Segal,* 549 F.2d 1293 (9 Cir. 1977); *United States v. Winsett,* 518 F.2d 51 (9 Cir. 1975). Indeed, the use of transcripts has been expressly approved by the Supreme Court:

> "While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Gagnon v. Scarpelli, supra,* 411 U.S. at 783, n. 5, 93 S.Ct. at 1760.

At the very least, therefore, appellee would have to show prejudice resulting from the use of the transcript. *See United States v. Miller,* 514 F.2d 41, 42 (9 Cir. 1975). The burden is on the parolee to demonstrate that the failure to provide a particular safeguard was under the circum-

stances of his case so prejudicial as to be a denial of due process. *M'Clary v. California Adult Authority*, 466 F.2d 1122, 1124 (9 Cir. 1972), *vacated*, 412 U.S. 916, 93 S.Ct. 2737, 37 L.Ed.2d 142 (1973), *on remand*, 481 F.2d 1281 (9 Cir. 1973).

In this case, appellee was represented by an attorney at every stage of the proceeding. It was appellee's attorney himself who moved for the introduction of the transcript as evidence. The hearing officer knew of the weight of Mrs. Merrill's testimony in the criminal trial and could balance it against the live testimony he heard. We think it is clear that the reason for the finding of guilt is the lesser standard of proof in the parole revocation proceeding. No prejudice resulted.

### Equal Protection

 Appellee lastly argues that he was denied equal protection because of the failure of the court to provide travel costs for Mrs. Merrill to attend the hearing.[3] He claims this failure discriminated against him as an indigent prisoner unable to pay these expenses himself. Yet there is nothing in the record to indicate that appellee even requested Washington authorities to pay the travel expenses. Moreover, it has been decided that due process, rather than equal protection, is the applicable standard by which to judge parole revocation hearings. *See Wainwright v. Cottle*, 414 U.S. 895, 896, 94 S.Ct. 221, 38 L.Ed.2d 138 (Douglas, J., dissenting), *on remand*, 493 F.2d 397 (5 Cir. 1974); *Boddie v. Connecticut*, 401 U.S. 371, 374–77, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). And due process does not require live testimony. *Gagnon v. Scarpelli, supra*, 411 U.S. at 783 n. 5, 93 S.Ct. 1756. Therefore, appellee's equal protection claim is without merit.

### Conclusion

The judgment of the district court is REVERSED and the case remanded with in-

structions to deny the petition for writ of habeas corpus.

---

**3.** The district court did not consider appellee's equal protection argument. Normally issues not heard below will not be considered on appeal. *See Frommhagen v. Klein*, 456 F.2d 1391, 1395 (9 Cir. 1972). But since this claim has little merit, we exercise our discretion to dispose of it now. *See Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941).